```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES OF AMERICA,
                                          MEMORANDUM & ORDER
          -against-                       13-CR-0437(JS)

EDWARD DIAZ,

               Defendant.
-----------------------------------X
APPEARANCES
For United States:   Nadia E. Moore, Esq.
                     United States Attorney's Office
                     271 Cadman Plaza East
                     Brooklyn, New York 11201

For Defendants:      Zachary Stewart Taylor, Esq.
                     Taylor & Cohen LLP
                     40 Worth Street, 10th Floor
                     New York, New York 10013
```

SEYBERT, District Judge:

Defendant Edward Diaz ("Defendant") seeks a reduction of his sentence pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in light of health concerns surrounding the COVID-19 pandemic, his underlying medical condition, the Bureau of Prison's ("BOP") response to the pandemic at Federal Correction Institute ("FCI") Schuylkill, where Defendant is incarcerated, and his rehabilitation. (Mot., ECF No. 99; Reply, ECF No. 102.) The Government opposes the motion. (Gov't Opp., ECF No. 101.) For the reasons set forth below, the motion is GRANTED.

1

BACKGROUND

Defendant was arrested on June 27, 2013 and charged with conspiracy to possess and distribute 100 grams or more of methylone[1] in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). (See Indictment, ECF No. 10; Presentence Investigation Report ("PSR"), ECF No. 70, at ECF p. 1.)  He was unarmed at the time of his arrest and immediately acknowledged his participation in the methylone distribution scheme, which involved importing large amounts of methylone, also known as "bath salts," from China and distributing them in Manhattan, New York.  (PSR ¶¶ 3-8.)  On July 27, 2015, Defendant entered a guilty plea to count three of the indictment before the Honorable Leonard D. Wexler.  (Min. Entry, ECF No. 68.)  On August 4, 2016, Judge Wexler sentenced Defendant to seventy-two months' imprisonment, followed by three years of supervised release.  (Min. Entry, ECF No. 75; Sent'g J., ECF No. 76.)[2]

Defendant is currently serving his sentence at FCI Schuylkill and is projected to be released on November 6, 2021.  See  BOP.gov,  https://www.bop.gov/inmateloc/index.jsp  (last visited Mar. 16, 2021).  When Defendant filed his motion on January

---

[1] Methylone has a chemical composition similar to MDMA and is often found in substances labeled as "bath salts."  Methylone Abuse: Dangers, Symptoms, and Treatment, AMERICAN ADDICTION CTRS., https://americanaddictioncenters.org/bath-salts-abuse/methylone (last updated June 17, 2019).

[2] This case was reassigned to the undersigned on June 17, 2020.

2

11, 2021, there were 59 inmates and 13 staff with confirmed COVID-19 cases at FCI Schuylkill, including Defendant, but according to BOP records those numbers have since decreased. See COVID-19 Cases, BOP.gov, http://www.bop.gov/coronavirus/ (last visited Mar. 16, 2021) (listing 13 inmates and 10 staff as testing positing for COVID-19).

Defendant is thirty-five years old and has a history of mild asthma. (BOP Recs., Taylor Aff., Ex. 2, ECF No. 100-2, at ECF p. 1.) On December 23, 2020, five days after Defendant passed out and fell in a bathroom stall, Defendant tested positive for COVID-19. (Mot. at 1; Updated BOP Recs., Taylor Aff., Ex. 1, ECF No. 103-2, at ECF p. 7 (noting Defendant's bathroom injury).) After his positive COVID-19 diagnosis, Defendant was placed in lockdown, where he found it difficult to secure treatment for his lingering symptoms. (Reply at 1.) Although he admits that his symptoms are not life threatening, he states that he is experiencing "severe headaches in the lower back of his head, tingling and numbness in his hands, and frequent episodes of vertigo, lightheadedness, and nausea." (Id.) Defendant is unsure whether his persistent symptoms are the long-term effects of COVID-19 or relate to his fall. (Id. at 2.) He attributes this uncertainty to the "scant medical care" he has received since his COVID-19 diagnosis, although Defendant's most recent BOP medical records reveal Defendant has undergone several tests since

3

reporting his symptoms. (Id. at 1; Updated BOP Recs. at ECF pp. 8-24.)

Defendant states that he has been a "model prisoner throughout his incarceration" and has not received a single disciplinary infraction. (Mot. at 4.) His criminal history includes a grand larceny conviction in New York State court, for which Defendant was sentenced to 2-6 years and directed to pay $150,000 in restitution. (PSR ¶ 29.)

## DISCUSSION

I. Legal Standard

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)). The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Under the statute, courts have discretion to grant compassionate release when (1) there are "extraordinary and

4

compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set forth in 18 U.S.C. § 3553(a)." United States v. Canales, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

District courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2020); see id. at 236 (finding that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling"). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Id. at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its

5

discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted). A defendant "bears the burden of showing that his release is justified." United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020).

## II. Analysis

The parties do not dispute that Defendant exhausted his administrative remedies. The Court thus turns to the merits.

### A. Extraordinary and Compelling Reasons

Defendant argues his inability to secure adequate medical treatment from BOP, which Defendant contends is preoccupied with mitigating the COVID-19 pandemic, and his rehabilitation are "extraordinary and compelling" reasons that justify his release. (Mot. at 2-4.) If released, Defendant represents that he will convalesce at his parents' home, where he lived while released on bail in this case. (Id. at 2.) The Government opposes the motion and argues that Defendant's mild asthma and recent COVID-19 diagnosis, for which the Government contends Defendant has received adequate treatment for his mild symptoms, do not constitute extraordinary and compelling reasons to release Defendant. (Gov't Opp. at 6-8.)

6

Based on the facts unique to this case, including Defendant's troubling and uncertain medical condition for which the BOP, understandably in light of its focus on combatting the COVID-19 pandemic, has been unable to provide an adequate course of treatment, the Court exercises its discretion under Brooker and finds extraordinary and compelling reasons favor a sentence reduction. 976 F.3d at 237-38 ("[A] district court's discretion [in sentencing] -- as in all sentencing matters -- is broad" and a "lengthy sentence" in connection with "the present coronavirus pandemic, which courts around the country, including in this circuit, have used as a justification for granting some sentence reduction motions.") Because Defendant has already contracted COVID-19, the Court "focuses on the impact of COVID-19 on [Defendant] and his ability to 'provide self-care' within the correctional facility in light of his diagnosis." United States v. Vega, No. 20-CR-0229, 2020 WL 7060153, at *3 (E.D.N.Y. Dec. 2, 2020) (citing United States v. Adams, No. 10-CR-0082, 2020 WL 4505621, at *3 (S.D.N.Y. Aug. 4, 2020)); see also United States v. Pena, No. 18-CR-0640, 2021 WL 396420, at *2 (S.D.N.Y. Feb. 4, 2021). To date, that impact is uncertain, and "there is no guarantee that [Defendant's] symptoms and medical needs will remain so minimal," especially given the concerning medical episodes Defendant has experienced coupled with, and potentially connected to, his COVID-19 diagnosis. United States v. Mongelli,

7

No. 02-CR-307, 2020 WL 6449237, at *3 (E.D.N.Y. Nov. 3, 2020). While it appears the BOP has endeavored to diagnose and treat Defendant's illness, this Court remains "convinced that [Defendant] faces severe health risks and that he will be better able to access whatever care and treatment he may require in the future if he is not incarcerated." Id.

Defendant's record of rehabilitation further supports the Court's finding that extraordinary and compelling reasons justify reducing his sentence. Brooker, 976 F.3d at 238; United States v. Mapp, 467 F. Supp. 3d 63, 65 (E.D.N.Y. 2020). Indeed, Defendant has not incurred a single disciplinary infraction while incarcerated, which is not surprising given Defendant's limited criminal background and lack of violent history.

B. The 3553(a) Factors

The Court has considered the Section 3553(a) factors and finds they weigh in favor of release. See 18 U.S.C. § 3582(c)(1)(A)(i); United States v. Harris, No. 15-CR-0445, 2020 WL 5801051, at *2 (S.D.N.Y. Sept. 29, 2020) (considering the Section 3553(a) factors and recognizing that, under Brooker, "when assessing a motion brought directly by an imprisoned person rather than by the BOP, the Court is constrained neither by U.S.S.G. 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community").

The Court does not make this decision lightly: Defendant's crime was, by his own admission, "serious." (Mot. at 1.) He admitted to importing more than 100 kilograms of methylone, or bath salts, from China and distributing them in his community, thus contributing to the proliferation of dangerous synthetic drugs. See, e.g., Frank Langfitt, A Chinese Chemical Company and a 'Bath Salts' Epidemic, NPR, https://www.npr.org/sections/parallels/2014/06/16/321779232/how-bath-salts-a-drug-made-in-china-wreaked-havoc-in-the-u-s (June 16, 2014) (describing how, around the time of Defendant's arrest, bath salts created in a Chinese lab "sent hundreds of people to emergency rooms for hallucinations, seizures, even heart attacks" in central New York). But while the "severity of [Defendant's] conduct remains unchanged," the "environment where [he] is serving his sentence" has certainly changed. Vega, 2020 WL 7060153, at *4 (citing United States v. Zukerman, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020) ("When the Court sentenced [Defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." (quoting United States v. Rodriguez, 451 F. Supp. 3d 392, 407 (E.D. Pa. Apr. 1, 2020)))). Defendant has been incarcerated for nearly five-and-a-half years, close to ninety percent of his original sentence, which is "substantial . . . as befits the nature and circumstances of the offense." Mongelli, 2020 WL 6449237, at *3.

9

Moreover, the Court finds a reduced sentence, followed by home confinement, is sufficient "to afford adequate deterrence" and "to protect the public from further crimes of [D]efendant." 18 U.S.C. §§ 3553(a)(2)(B), (C). Defendant does not present a "meaningful danger to the public." United States v. Brown, 467 F. Supp. 3d 209, 213 (E.D.N.Y. 2020). Defendant's crime, while serious, did not involve guns or violence, and Defendant "does not have a history of violence or of gun usage or possession." Id. at 212. Indeed, this is Defendant's only drug offense. And any risk that Defendant might recidivate, already minimized by his health, "is further mitigated by the supportive and stable environment to which [Defendant] will be released." Mapp, 467 F. Supp. 3d at 66. According to the PSR, Defendant's family and fiancé have remained supportive throughout his incarceration and are willing to take him in during his period of home confinement. (PSR ¶¶ 32-39.)

Last, Defendant has taken significant steps towards rehabilitation and "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing." Pepper v. United States, 562 U.S. 476, 491 (2011). As noted supra, the Court credits Defendant's spotless disciplinary record while incarcerated and notes that "the absence of any disciplinary infraction related to violence or drug use, demonstrates that he is unlikely to commit future criminal acts or

10

pose a danger to the community." United States v. Yu, No. 90-CR-0047, 2020 WL 6873474, at *5 (S.D.N.Y. Nov. 23, 2020). Therefore, the period of incarceration that Defendant has already served, with the forthcoming period of home confinement and supervised release, is sufficient but not greater than necessary and complies with the purposes of sentencing under Section 3553(a).

## CONCLUSION

For the reasons stated herein, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 99) is GRANTED. **IT IS HEREBY ORDERED** that:

(1) Defendant's sentence is modified to time served and the previously imposed term of three (3) years' supervised release will commence immediately. Defendant is subject to the previously imposed term(s) of supervised release, including all standard, mandatory, and special conditions of supervision delineated at sentencing by this Court. The Court imposes additional special conditions of supervised release: during the period equivalent to the undischarged portion of his sentence, (1) Defendant shall be subject to electronic monitoring by whatever technology is deemed appropriate by the Probation Department; and (2) Defendant shall be on home detention, except as necessary for employment; education; religious services; medical, substance abuse,

11

or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as preapproved by the Probation Department; and

(2) Upon release, Defendant shall self-quarantine for fourteen (14) days; and

(3) Within one week of his release, Defendant shall call the Probation Department to schedule an appointment.

SO ORDERED.

/s/_JOANNA SEYBERT___
Joanna Seybert, U.S.D.J.

Dated: March __23__, 2021
　　　　Central Islip, New York

12